Good morning, Your Honor. Good morning. Please, the Court. My name is Mark Gottlieb. I represent the appellants, Jean-Pierre Rey and Ilza Silrassa, in this matter. I trust the Court is thoroughly familiar with the briefs on this matter, so I won't waste too much time. I'd like to just get right into the crux of this, and that is that we believe that the lower court abused its discretion in applying a forum selection provision in a contract that had absolutely nothing to do with the issues in the complaint. And in dismissing it, the Court, we believe, basically had to make factual determinations in order to link this Euroinvest contract to the power of attorney that was granted to the appellees in this case. So you have a situation in 2009 where a power of attorney was granted to my client's brother, and this power of attorney had to do with the four corporations. At the time, it was two corporations, but it became four corporations, all based in Washington. And subsequently, they entered into a second agreement in 2012 that had absolutely nothing to do with the properties or the shares in the four Washington corporations. It is the Euroinvest contract that had the forum selection provision in there. But the Euroinvest agreement had nothing to do with the allegations in the complaint, had nothing to do with what we allege were the improper transfers of the shares in these corporations to Michelle Wray. And so the only way for the Court to get to the forum selection provision was to basically, in a de facto way, make findings of fact. And we believe that in doing so, it didn't apply the appropriate standard in a motion to dismiss based on a forum provision. So we believe that the Court should have used the proper analysis of accepting the plaintiff's pleadings as true, construing all facts in the plaintiff's favor in this case. And we don't think the Court did that. We basically believe that the Court took the position that there's an agreement, the agreement has a forum selection provision, we go no further than that. We're done. Let Geneva, the courts in Switzerland, figure out whether or not it should be applied, it should be enforceable, it's valid. Is there anything now pending in Switzerland? I do not know for certain, Your Honor. I do believe that there was an action, according to the briefs, the appellees filed a declaratory judgment action in Switzerland in 2014, and I think it was withdrawn at some point in time, or it was either abandoned or withdrawn. But even that, even that case goes to the heart of this matter, because in that case, Michelle Wray was seeking declaratory judgment as to the validity of that agreement that they were relying on. In November 23rd agreement? Yes. And so I don't even think we need to get to the Euroinvest agreement. I think it doesn't play any role here. And I think the arguments that Respondent has made in this case is a bootstrap argument. And I think the district court unfortunately followed along with that. So you basically had an opportunity to litigate the validity of that agreement and for whatever reason abandon the attack. Michelle Wray had the ability to seek a declaratory judgment from the courts in Switzerland, which should have no bearing on this case in any event. I understood. But I mean, for whatever reason, no Swiss court ever passed upon the validity even though he filed an action to test it. That's my belief. And we can ask. But it is your complaint going back to where we're at, which is this motion to dismiss. And the district court cited a sentence, an allegation in your complaint that Michelle relies on the November 23rd agreement. So I looked through the complaint to see his declaration says otherwise. His declaration says that he relies on a much earlier oral agreement, of course. And that was there at the time of the motion to dismiss was before the court. But the complaint doesn't make that allegation. I'm not sure I understand the question, Judge Christin. The point, I think, counsel, is that you're arguing that the judge was required to look at the complaint and to not do any fact finding. There is an allegation in the complaint that Michelle relies upon the November 23rd agreement as a defense. If I may respond to that, I believe that that was misconstrued. I think what plaintiff was saying was that he was anticipating his brother's defense. He's not alleging that that was true. I understand, counsel. That is the allegation. And I looked in the complaint to see the allegation. And again, it's there by the time the motion to dismiss became right, because it's in Michelle's own declaration that what he's actually relying on is a much earlier oral agreement. Right? I believe he is relying on an oral agreement as well. He's relying on a lot of different things. So let me just follow up on that, because that's my understanding as well. My understanding was that we would only get to the Euroinvest agreement if the court found that there was a second oral agreement that existed between Michelle and Jean-Pierre for a trading of the shares in Euroinvest for some. I think at a minimum that's true. I don't know how they can get to the Euroinvest agreement under any circumstances unless there's some valid link between the Euroinvest shares and the causes of action that are alleged in the complaint. I'm sorry. I didn't really finish my statement. But for trading the Euroinvest shares for the shares in the Washington or control of the Washington Corporation. I know that Respondent has made that argument, that that's the link. But that's not something that the district court should be doing on a motion to dismiss. I agree, Your Honor. I think that the court overreached in this case. And not only that, but even putting aside those factors, you have public policy decisions under the normal forum nonconvenience analysis. And in this particular case, you have so many persuasive arguments as to why this matter should be ---- Making a forum nonconvenience argument? You have all these arguments. You have the basic arguments that the complaint was brought in in Washington. It was brought against a person that had ---- So my question is simple. Did you make a forum nonconvenience argument? The arguments, I believe, were made below in the lower court that the alternative the judge used the wrong approach in analyzing why this case should be transferred out. And I think that argument was made in the lower court that ---- There's a forum selection clause, no question. Right. But did you respond with a forum nonconvenience argument? The argument, I think, was assumed within the ---- all the briefs that were before the lower court. Do you have a citation for me? I ---- Let me see if I do, Your Honor. I apologize for not having that handy. That's okay. You're going to be back up. You want to ---- You don't want to take your time now. You can come back and maybe respond. I'll come back on that. Okay. I believe that those arguments were made in the lower court. And we ---- we looked at all the various policy determinations that ---- or policy issues that go into those issues, such as the allegation, the tort that was allegedly committed was done in Washington. It involves Washington assets. It involves a Washington Respondent applying Washington law. All of the traditional forum nonconvenience public policy arguments apply in this case and, in my opinion, warrant this case remaining in Washington. I think that if you look at the case that we cited, the most important case in this case, which is cited at 362, Fed 3rd, 1133, this Court decided that if the facts asserted by the nonmoving party are sufficient to preclude enforcement of the forum's selection clause, the nonmoving party is entitled to remain in the forum it chose for suit unless and until the district court has resolved any material factual issues that are in genuine dispute. As a result, until the facts are resolved, the nonmoving ---- in many cases, the nonmoving party will survive the Rule 12b3 motion. I think that that case is right on point in this particular case. And all the arguments that the Respondent has made in this case all start with sort of a bootstrap approach where we have this agreement and, therefore, the district court should go no further. We have a valid and enforceable forum selection provision, and, therefore, a decision as to whether or not it should be applied to be done by a Swiss court and not the district court here. But I think that you can't get to that until you decide whether or not that agreement has any basis in this complaint. And the only way to do that is to make some findings of fact, because there are a lot of disputed factual issues in this case. And I don't know how you get to those here. Counsel, did you say that the standard of review is abuse of discretion? We said, well, we think it's de novo review in this particular case. Under the SINMILA case? I'm sorry, Your Honor. Let me just pull up my notes on that, because we do have Okay. I think you started by saying it's abuse of discretion, and I didn't think that's the position taken in your brief. So I want to be sure what your position is. We took both positions, basically. We took the position that it's really de novo review, that in dismissing the case based on the facts, based on finding the facts as it did, that the court applied the wrong standard here. If I may find my notes on this, Your Honor. Sure. Can I come back to that when I come back on rebuttal? I'd like to Do you want to save some time? Yeah. Let me save two minutes for rebuttal. I only have two minutes. I just wanted to touch very briefly on – I don't want to spend too much time on the Liz Pendon's arguments. I think the Court is familiar with the arguments. We understand the Liz Pendon's. And I don't want to spend too much time with it. I wouldn't waste any time on that. So I'm going to defer the rest of my time – save the rest of my time for rebuttal. Okay. Mr. Bone? Good morning, Your Honors. Jeff Bone here for the appellees. Like many family disputes, the underlying merits of the appellant's claims here involve a very divergent and complicated set of facts. And they involve a series of verbal and written agreements between the brothers who are really the main linkages here. If that's the case, why did the district court dismiss it on a 12B motion as opposed to waiting for Rule 56 or maybe even a trial on the merits? Well, that's because most of – for purposes of an appellee's motion to dismiss, most of those complicated and divergent set of facts are irrelevant. Really, there are two critical facts that are undisputed. Isn't one of the critical facts, as I suggested in my questioning of Mr. Gottlieb, whether or not there was a second oral agreement trading stock for stock in Euroinvest for control of the Washington Corporation? Well, it's – the undisputed fact is that that is what Michelle's defense is going to be. But then why is the – Oh, sorry. Sorry, I interrupted you. Forgive me. It's just that – I'll just finish so you can maybe wrap your questions around – your answer around it. It seems to me if that's the case, then the November 23rd agreement is irrelevant. No. Actually, it's quite the opposite. Because if the November 23rd agreement doesn't exist, then Michelle has no rights in the Euroinvest company that he can then trade back to Jean-Pierre for the shares in the Washington Corporation. But you're putting the cart before the horse. Right, right. So Judge Tallman's point is regardless of whether it does or doesn't exist, meaning the November 23rd agreement, if there's a subsequent oral agreement, then the November 23rd contract – I guess I'll call it a contract – could be irrelevant. I agree that if there's no subsequent oral agreement that the November – that if – let's say that Michelle was the owner of Euroinvest per the terms of the Euroinvest agreement. Okay. And that if a court were to find that there was no subsequent oral agreement, then Michelle's defense, which is based on that oral agreement, would take a big hit. However, the standard for whether or not a party's claims fall within the scope of a forum selection clause is whether or not those claims are related to interpretation of the agreement contained within the forum selection clause. And I think the analysis – Wait, wait, wait. We don't get to forum selection clause because that assumes an enforceable contract. If there's no enforceable contract, then we never look at the forum selection clause. But if Michelle isn't the owner of Euroinvest because of the November 23rd contract, which is the first contract, that's the starting point for the analysis. I guess that's where I'm parting company with you because I think you've got to first start with the question of whether or not the oral agreement is enforceable. And if the answer is no, then we never get to the Euroinvest agreement. Well, our position is that you can't start the debate on whether or not the oral agreement is enforceable until you determine whether or not Michelle was the owner of Euroinvest by the terms of the November 23rd agreement. Because that's – I think I understand your position. I just don't see the case that way. So I don't know what – I'm not sure I can formulate a question to help you resolve my reading of the record. Well, I mean, I think some of the – let me refer you to some of the cases we cited in our brief. For example, the Tri-Cities case. I mean, you have – there are a number of cases where parties have a series of written or verbal agreements. And sometimes claims that arise out of subsequent contracts are found to relate back to an earlier agreement, even though you could, I guess, as a matter of an intellectual exercise, debate whether or not those claims are proper under the second agreement first. But help me here, counsel. You filed a lawsuit essentially seeking damages and injunctive relief for violation of the durable power of attorney. And that doesn't have anything to do with the Euroinvest agreement. It has everything to do with issues under Washington law of overreaching, breach of fiduciary duty, wrongful filing of notices of lease pendants, wrongful transfer of stock in Washington corporations. That's your lawsuit, isn't it? Well, Your Honor, it's not our lawsuit. It's their lawsuit. That was the original lawsuit. But our defense to that lawsuit is that we had a right – Michel had a right to transfer – to make the transfers that are at issue because, first and foremost, he was the owner of Euroinvest per the terms of the November 23rd agreement, and therefore had the power – We're arguing the same thing again. We're back to the problem of whether or not the court has to first determine that there was actually an agreement to exchange control in the Swiss corporation for the Washington corporation. Well, let me go back, then, to the Tri-Cities case, which is – Can you – I have to really – I just have to – before you get to Tri-Cities – Sure. I understood, Michel, to be arguing three things, that there was an oral agreement dating back to, I think, 2008 or 2009, by which the Euroinvest was always supposed to be his. He was the mastermind behind and provided the business model for Euroinvest and so on and so forth. Then there's the November 23rd agreement, which, of course, was written. And then my understanding is he makes a third allegation, is that he resold the Euroinvest stock back. That's correct. All right. So if – so focus – when I talk about the oral agreement, maybe this is why we were miscommunicating, I'm talking about the second one. If the second one exists, then how is the first one relevant? Because Jean-Pierre has claimed that, at all times, he was the owner of Euroinvest, despite that first – that first oral agreement. And that's the whole reason they entered into the November 23rd agreement, is because Michel was concerned that Jean-Pierre was going to do something like that and wanted to get the terms of the agreement in writing. If the court were to find that after the – after the November 23rd agreement, that there was a subsequent oral agreement by which Michel transferred the stock, the Euroinvest stock, back to Jean-Pierre, why would the court need to construe the November 23rd agreement? Because the court can't determine that Michel had control or the ownership of Euroinvest in order to transfer it back to Jean-Pierre without first determining that the November 23rd 2012 agreement is valid and enforceable. That's what I understood you to say the first time. If that's your argument, it just strikes me that you're on really thin ice, if we're talking about that being the – and it does feel like a bootstrap – if that's your best shot at trying to argue that the district court was really compelled to construe and was bound by that forum non-selection clause – or forum selection clause, forgive me. No, that – yes, Your Honor. I mean, that's our argument. And the reason is that – I mean, again, I'll go back to the Tri-City and the next – the next trade cases. For example, in Tri-Cities, the initial contract was a supply contract between the parties. They then thereafter ran into some issues. They entered into a subsequent promissory note, and the plaintiff sued on the promissory note. But it was the first supply contract that contained the forum selection clause. Theoretically, the district court could have said, well, you haven't violated the terms of the promissory note, so I don't need to go back to the supply contract. But the court did the exact opposite. It said, there's a forum selection clause in the supply contract that's – that I have to deal with that relates to the terms of the promissory note, and thus their claims fall within the scope of it. And that's the same thing with the next trade contract – or the next trade case, where the initial – the initial claims were – or the claims were based on a wrongful – they were wrongful termination claims. But they were – the plaintiff entered into a different contract that contained the forum selection clause. And so, again, theoretically, the court could have just said, well, you don't have any wrongful termination claims, so I don't need to deal with this forum selection clause. But, again, the claims did relate to each other. And as I've said, if Michel did not have the ownership to Euroinvest, he – he cannot have transferred those shares back to Jean-Pierre Persaud in terms of the Euro agreement. Kagan. I'm not sure I agree with you on that point, but let me just ask you one follow-up question. Whether the – whether these claims do sufficiently relate to the contract in which there is a forum selection clause, isn't that question a question of law that we review de novo? Yes, Your Honor. That is a question of law that you would review de novo. In light of the terms of the – I would say the terms of the forum selection clause in the agreement, which make clear that any litigation – not any claims, but any litigation stemming from the conclusion, execution, or interpretation of this agreement must be heard over in Geneva. That's a very broad forum selection clause. So what's the status of proceedings in Geneva? The status is, Michel, during the pendency of this case below, initiated a declaratory judgment action over in Geneva. After the claims against Jean-Pierre were dismissed, Jean-Pierre actually went and filed notices of Liz Pendens in the district court claiming that that action over in Geneva affected title to property in the U.S. corporations. Those claims were then dismissed. Jean-Pierre then did not essentially refuse to accept service or appear before the Swiss court. And since, you know, this case was on appeal, Michel saw no reason to essentially waste his money trying to prosecute this case that his brother had no interest in appearing in. The other – I mean, this – again, this isn't – But why wouldn't he want to get – if he were in U.S. court, why wouldn't he want to get a default judgment on his declaratory judgment action? I don't know the ins and outs of Swiss law, but my understanding is that it was going to be – just be an expensive process, and he didn't want to have to waste money on it. And then I – this also isn't in the record, but Jean-Pierre has at some point also started an action over in Geneva for – my understanding is he started an action over in Geneva that's essentially the same thing, who's the owner of the Euroinvest agreement, but let that action lapse as well. So my understanding is that currently there are no pending actions over in Geneva. So why would it be proper then to enforce the Forum Selection Clause if both parties have at various times availed themselves of the services of Swiss courts and then abandoned litigation there? Well, first and foremost, because that's what the parties agreed to by the terms of the November 2012 agreement, but it forces the parties to actually go over there and participate in the litigation. I think Jean-Pierre decided he didn't want to deal with the litigation over there because he was holding his hopes out for this appeal. But if this rules that, hey, all of the claims have to go over to Switzerland, I'm pretty sure that they're going to engage over there. I don't think we can transfer claims regarding notices of Liz Pendens involving Washington real estate to a Swiss court in Geneva. Absolutely. I agree with that, Your Honor. But those are separate issues. I mean, the motion to dismiss was granted before the notices of Liz Pendens were filed. Do you want to talk about the notices of Liz Pendens? Absolutely. The district court properly canceled the Liz Pendens under applicable Washington law. The great weight of authority in Washington is that Liz Pendens is only proper if the underlying dispute directly affects title to real estate. Here, the appellants concede that the dispute is, at its core, won over the ownership of capital stock. It therefore cannot directly affect title to real estate. That's because Visitrade, one of the U.S. corporate defendants, has at all times been the owner, been the title holder to the real estate that's at issue. And whether or not Jean-Pierre or Michel own the stock in that corporation, it will remain the owner and the title holder. Given that fact, it's not surprising that cases from around the country, and we cited six or seven cases in our brief, have found that Liz Pendens should be canceled where the dispute is won over corporate control. And notably, the appellants don't cite a single case that holds otherwise. And those results make sense and comport with Washington law, because Washington, the Washington Supreme Court, has held that a corporation is a separate and distinct entity from its shareholders, and that those shareholders have no property interest in the corporate assets. So given that fact, again, appellants' claims are ones over capital, related to the capital stock. They cannot directly affect the title to real estate. Appellants make one argument in kind of a conclusory fashion, that this court should pierce the corporate veil through an alter ego theory, but they never made that argument below. So it's been waived and they've provided no evidence in support of it. In addition, the appellants argue that the correct test is a right incident to title test, and they rely on a single Washington case for that proposition, the Schwab case. But Schwab has been narrowly construed by the Washington courts, and even if it applied, it wouldn't change the result. Schwab involved an easement issue, which is a property right. And Division 2, the same division that decided Schwab, later held that distinguished Schwab and said that really it only applies to easement cases. Subsequently, that same division reaffirmed that the proper test is whether or not the dispute directly affects title to real property. Even if the right incident to title test applied, it wouldn't change the result, and that's because courts have held that incident to title means that a judgment would expand, restrict, or burden a property owner's rights as bestowed by title. In Schwab, the easement affected the property owner's access, and therefore affected a right incident to title. That wouldn't be the case here for visit rate. Appellants also cite a couple, or claim that they are seeking equitable relief in the form of the return of capital stock, and then they cite to some constructive trust cases. However, they never claimed or sought relief for constructive trust, so they can't do it now. But even if they did, the cases that they rely on, in particular, the Tucson Estates case, that's the case that the Schwab court relied on. It's an Arizona case. It acknowledged that Liz Pendens are improper for constructive trust over capital stock. So for all those reasons, it's clear that this dispute over corporate ownership does not directly affect title to the real property of the issue, and for that reason the court, District Court, properly canceled those Liz Pendens. Is there an informed nonconvenience argument? The forum nonconvenience argument, well, the argument is that there's not a separate forum nonconvenience argument apart from the forum selection clause. Thank you. Thank you very much, Counselor. Thank you, Your Honors. I think you have some rebuttal time, Mr. Gottlieb. I just wanted to, just to answer Judge Christian's question about the review process, and I think as we stated on page 13 of our brief, that the court reviews de novo dismissals based upon venue, and whether the parties agree to a forum selection question is a selection clause. It's a question of law that's reviewed de novo, and we cited to several cases. We have the Myers v. Bennett Law Office case, which I'm sure Your Honors are familiar with, and the Chateau de Charm Wines Limited case, which I'm sure I'm butchering the name of that because I don't speak French. Well, that's okay. I think the Simila case is the one that I was after, but it doesn't matter. I think you've now both agreed that the question about whether or not the contract is sufficiently related to, within the scope of the forum selection clause, is de novo review. I think you've both agreed to that now, so. Thank you, Your Honor. I stand, the rest of it we stand on our briefs, unless the panel has any questions. No. We have your arguments in mind. Thank you very much. Thank you very much. The case just argued is submitted.
judges: Tallman, Christen, England